UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BRUCE ALSTON, et al.,

                    Plaintiffs,

        - v -

METROPOLITANS BORO CORP., et al.,

                    Defendants.
-------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV-06-0075 (JG)(VVP)

      Following a humiliating shopping experience at the defendants' retail establishment in downtown Brooklyn, the plaintiffs sued the defendants on multiple claims under state and federal law, including racial discrimination, intentional infliction of emotional distress, slander and deceptive business practices. When the defendants failed to respond to the complaint, Judge Gleeson entered an order directing the entry of default and enjoining the defendants from further violations of law in the conduct of their business. As to damages, Judge Gleeson referred the matter to me for a report and recommendation.

      In support of their claims for compensatory and punitive damages, the plaintiffs offered testimony at a damages hearing held on July 27, 2006. The hearing was held on notice to the defendants, none of whom appeared. Each of the plaintiffs, Bruce and Grace Alston, testified. In addition, the plaintiffs have submitted sworn statements by friends and colleagues, as well as an affirmation by another victim of the defendants' practices.[1] On the basis of the evidence

---

[1] The court may rely on sworn statements such as affidavits and affirmations in conducting a damages inquest. *See, e.g., See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.' "); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993).

submitted, the court makes the following findings of fact and recommends the damages awards below.

The plaintiffs' experience with the defendants took place over a period of several days in September 2005. It began with a visit by the plaintiffs to the defendants' cellular telephone storefront, which advertised itself as an outlet for Nextel telephones. Since the plaintiffs, newlyweds at that time for about four months, specifically wished to purchase a Nextel telephone they entered and discussed some of the models on display with one of the employees. They were told about a special offer by which they could obtain a particular Nextel model, the I730, under a "buy one-get one free" deal for a total of $175. The plaintiffs expressed interest, but left without purchasing anything. After doing some pricing research on the internet and determining that the offer was better than prevailing prices elsewhere, Grace Alston returned to the store with the intention of buying the I730's at the price that had been offered.

When she returned, however, the defendants pulled a classic "bait and switch." Upon her return, Grace Alston dealt with the defendant Barry Shargel. He convinced her that the model she and her husband had settled on was inferior, and suggested a different model with a higher price. She telephoned her husband Bruce, who then engaged in negotiations by telephone with Shargel. The negotiations concluded with the plaintiffs purchasing two telephones different from the I730's they originally intended to purchase. Grace paid for the phones and took them home.

That evening, upon inspection, Grace and Bruce discovered that the phones they had been sold were actually of inferior quality, not at all like the telephones they thought they were purchasing. Indeed, upon doing research on the Nextel website, they found that the model

number of the telephones they had been given were not even listed. Bruce telephoned a Nextel representative who told them they had 14 days to obtain a refund.

The next day, they returned to the store and sought out Shargel to obtain a refund. Shargel refused, saying that all he could offer was an exchange. The plaintiffs, by this time having lost trust in the store, insisted on a refund and told Shargel what they had been told the night before by the Nextel representative. Shargel responded by saying his store was not bound by Nextel's rules because the store was not a Nextel store. When the plaintiffs pointed out that the store's outdoor signage and indoor displays prominently displayed the Nextel name and advertising and that there were no signs posted stating that the store had a "no-refund" policy, Shargel became belligerent, raising his voice and approaching within inches of Bruce Alston's face. When Alston asked Shargel to step back, the defendant Patrick Rodriguez intervened to say he would handle the situation.

Initially relieved that the situation might be resolved with Rodriguez's appearance on the scene, the plaintiffs learned all too quickly how mistaken they were. In the middle of the store, and in plain view of other customers and employees, Rodriguez began reviling both plaintiffs with foul and profane language attacking Bruce with taunts that he was a "fat bitch nigger," a "broke ass nigger," and a "bullshit nigger." Like Shargel, Rodriguez was inches from Bruce Alston's face, and at one point challenged him to go outside. Apparently realizing that matters were out of hand, Shargel interrupted the confrontation to offer the plaintiffs the I730 model telephones they had originally sought, although at a higher price. Since he only had one in stock, however, he said that he had to wait for one to be delivered from another store. Although reluctant, the plaintiffs waited for a period of time for the telephones; they never arrived. Unfortunately, while

they were waiting Rodriguez took the opportunity to further harangue the plaintiffs from time to time with more profanity and with repeated challenges to Bruce Alston to go outside. When he wasn't haranguing the plaintiffs, he was shadow boxing with another employee in an obvious attempt to intimidate and humiliate Bruce Alston. At one point, a point described by Bruce Alston as the lowest point for him, Rodriguez walked over to him and started peeling off dollar bills and throwing them at Alston's feet, calling him a "bitch ass nigger" and telling him, "you can't afford nothing." Ultimately, the plaintiffs left, humiliated and without telephones.

The incident caused immediate difficulties in the newlyweds' marriage for which they sought and received counseling both in joint sessions and in individual sessions. Although they no longer receive treatment, for Grace Alston there remains continued anxiety and bouts of sleeplessness. She avoids shopping altogether, and when she does go into retail establishments with her husband she is constantly in fear that they will be subjected to another humiliating experience. Coworkers and friends have submitted sworn statements attesting to her ongoing depression stemming from the incident.

For Bruce Alston, the effects have been even more severe. He has the same bouts of sleeplessness and anxiety experienced by his wife. His humiliation and embarrassment, however, stem not only from how he was treated, but also because he did not do more to protect his new bride from humiliation. He cannot avoid feeling that his wife thinks less of him and does not trust that he can defend her. The incident has affected him deeply at work as well. One of the two jobs he holds is at a Blockbuster Video store where he has constant contact with customers. Prior to the incident, his interactions with customers were never a problem. Now, however, he finds himself unable to deal with agitated customers and must remove himself from situations

where he may feel humiliated by something a customer says. His manager, coworkers and minister have submitted affidavits attesting to this change in his personality. He testified that he has now taken a vacation from the store and does not intend to return to work there because of his inability to cope with the public.

The above evidence is sufficient to justify damages awards in several categories. Principally, the plaintiffs are entitled to significant damages for the emotional distress they have suffered. Such damages are available for a number of the plaintiffs' claims, including those under 42 U.S.C. § 1981, the New York Human Rights Law (N.Y. Exec. L. § 296), and the common law claims for slander and intentional infliction of emotional distress ("IIED"). In considering the amount to be awarded, courts generally consider the egregiousness of the tort-feasor's conduct, the duration, severity, consequences and physical manifestations of the victim's mental anguish, and the extent of any treatment obtained by the victim. *See generally McIntosh v. Irving Trust Co.*, 887 F. Supp. 662 (S.D.N.Y. 1995); *Gleason v. Callanan Indus., Inc.*, 203 A.D.2d 750, 752 (3rd Dep't 1994). Upon reviewing cases under state and federal law which considered awards of damages for emotional distress in connection with various tort claims, including claims for intentional infliction of emotional distress and discrimination, the court finds that sustainable awards generally hover in a range from $20,000 to $30,000 for so-called "garden variety" emotional distress, and increase to as much as $100,000 or higher upon proof of special circumstances such as sustained unlawful conduct by the tort-feasor and medical evidence of substantial mental and emotional anguish by the victim. *See generally Cowan v. Prudential Insurance Co. of America*, 852 F.2d 688, 691 (2d Cir. 1988) (emotional distress damages of $15,000 for discrimination upheld); *Lynch v. County of Nassau*, 278 A.D.2d 205, 206 (2nd Dep't

2000) (IIED damages for garden variety distress reduced to $25,000); *Ortiz-del Valle v. National Basketball Ass'n*, 42 F. Supp. 2d 334 (S.D.N.Y. 1999) (emotional distress damages for discrimination reduced to $20,000); *Funk v. F & K Supply, Inc.,* 43 F. Supp. 2d 205 (N.D.N.Y. 1999); *Rivera v. Baccarat, Inc.*, 10 F. Supp. 2d 318 (S.D.N.Y. 1998)(emotional distress damages for discrimination reduced to $20,000); *Stram v. Farrell*, 223 A.D.2d 260, 265 (3rd Dep't 1996)(IIED damages for campaign of harassment lasting over a year reduced to $250,000); *McIntosh v. Irving Trust Co.*, 887 F. Supp. 662 (S.D.N.Y. 1995) (emotional distress damages for discrimination reduced to $20,000); *Borja-Fierro v. Girozentrale Vienna Bank*, No. 91 Civ. 8743, 1994 WL 240360 (S.D.N.Y. May 27, 1994) (emotional distress damages for retaliation reduced to $15,000); *Gleason v. Callanan Industries Inc.*, 203 A.D.2d at 753 (emotional distress damages of $54,000 for discrimination supported by evidence of medical problems); *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 57 (2nd Dep't 1990) (IIED damages for sex abuse over two-month period reduced to $100,000); *Murphy v. Murphy*, 109 A.D.2d 965, 967 (3rd Dep't 1985) (IIED damages for harassment occurring over one-year period reduced to $45,000); *but cf. Meacham v. Knolls Atomic Power Laboratory*, 381 F.3d 56, 78 (2nd Cir. 2004) (observing that although courts often reduce awards below $30,000, others have upheld awards in excess of $100,000 without proof of egregious conduct or medical sequelae).

With these considerations in mind, and given the egregious nature of the humiliation, the court recommends awards for emotional distress of $35,000 to Grace Alston and $50,000 to Bruce Alston. The somewhat higher amount for Bruce Alston is justified by the fact that the emotional trauma he suffered has had a substantial impact not only on his interpersonal relationship with his wife, but also on his job performance. Because both Shargel and Rodriguez

participated in the events that led to the emotional distress the Alstons have suffered they should be jointly and severally liable for those amounts along with the corporate defendants – Metropolitans Boro Corp., Cellular Island Communications, Inc., and Island Cellular Group, Inc. – who as their employer are responsible for their conduct on a *respondeat superior* basis.

Punitive damages are also appropriate here against the defendant Patrick Rodriguez and the corporate defendants. Such damages are available on a number of the plaintiffs' claims, including those under section 1981, the New York City Human Rights Law, and the claim for intentional infliction of emotional distress. *See Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 74-75 (E.D.N.Y. 2002) (citing *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 691 (2d Cir. 1998); N.Y.C. Admin. Code § 8-502(a); *Lynch v. County of Nassau*, 278 A.D.2d at 206; *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d at 58. The conduct of Rodriguez was clearly wanton and malicious, and thus establishes a basis for an award of punitive damages. *See, e.g., Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d at 75.

The principal consideration in setting the amount of such an award is the reprehensibility of the conduct at issue. *Id.* That inquiry rests on an evaluation of various aggravating factors, including "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee v. Edwards*, 101 F.3d 805, 810 (2nd Cir. 1996). Rodriguez's conduct, as established by the testimony of the two plaintiffs, more than satisfies the first two factors. The plaintiffs have submitted the affirmation of a non-party, Professor Angela Burton of the CUNY School of Law, which conclusively satisfies the third. Professor Burton's Affirmation sets forth an equally chilling account of conduct at the

same store by a person known to her only as "Patrick." The conduct she relates leaves little doubt that he is the same Patrick Rodriguez sued here. She too was the victim of Patrick's profane and vulgar language when she tried to return telephones. She too became the subject of physically intimidating conduct when she tried to pursue her rights. The affirmation provides ample evidence that the conduct encountered by the Alstons was not an aberration, but rather a standard mode of doing business employed by Rodriguez with the knowledge and implicit consent of his employers. Accordingly, awards of punitive damages in the amounts of $35,000 for Grace Alston and $50,000 for Bruce Alston should be made against Patrick Rodriguez and the corporate defendants.[2]

Finally, the plaintiffs have also established their entitlement to a relatively minor award of liquidated damages under the state consumer protection law. Specifically, under the New York General Business Law, the plaintiffs are entitled to damages as follows:

> any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater . . .. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.

N.Y. Gen. Bus. Law § 349(h). As there has been no showing of actual damages, the plaintiffs are entitled to an award of $50 under this statute.[3] Although the plaintiffs have also sought liquidated damages under the city's consumer protection law, that law does not authorize private

---

[2] As there is no showing that Barry Shargel participated in any substantial way in, or otherwise encouraged or authorized, the conduct of Patrick Rodriguez, he should not be held liable for the punitive damages awards.

[3] Curiously, the statute does not authorize an increase in the award of up to three times the liquidated damages amount of $50 upon the finding of a willful or knowing violation of the statute. If it did, the plaintiffs would be entitled to such an enhancement.

rights of action. Rather it authorizes the assessment of civil penalties in actions brought by the Commissioner of the Department of Consumer Affairs and an action by the Commissioner on behalf of consumers to recover monies on behalf of consumers harmed by a defendant's repeated violations of the city's consumer protection law. *See* N.Y.C. Admin. Code § 20-703; *see generally id*. §§ 20-700 *et seq.*

For the foregoing reasons, I recommend the following awards of damages be made:

1. Compensatory damages for emotional distress in the amount of $50,000 for Bruce Alston and $35,000 for Grace Alston, jointly and severally against all defendants;

2. Punitive damages in the amount of $50,000 for Bruce Alston and $35,000 for Grace Alston, jointly and severally against Patrick Rodriguez and the corporate defendants; and

3. Liquidated damages in the amount of $50 to Bruce and Grace Alston for the violation of the state consumer protection law, jointly and severally against all defendants.

\*      \*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d

Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve copies of this Report and Recommendation on the individual defendants by regular mail at their last known addresses, and on the corporate defendants by regular mail at their last known addresses and through the secretary of state. Certifications of such service are to filed in the record.**

             *Viktor V. Pohorelsky*
             VIKTOR V. POHORELSKY
             United States Magistrate Judge

Dated: Brooklyn, New York
    August 10, 2006